**Jeffrey J. BIGGS, Petitioner–Appellant,**

v.

**Cal A. TERHUNE, Director of WBS/ JFM CDC; California Board of Prison Terms; Board of Prison Terms, Respondents–Appellees.**

No. 02–15881.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2003.

Filed June 30, 2003.

Ann C. McClintock, Assistant Public Defender, Sacramento, CA, for the petitioner-appellant.

Jessica N. Blonien, Deputy Attorney General, San Francisco, CA, for the respondents-appellees.

Before HUG, GIBSON,* and FISHER, Circuit Judges.

HUG, Circuit Judge:

California state prisoner Jeffrey Biggs ("Biggs") appeals the district court's denial of his petition for a writ of habeas corpus challenging the failure of the California Board of Prison Terms ("the Board") to find him suitable for parole. Biggs argues that his procedural due process rights were violated when the Board found him unsuitable for parole.

## I.

Biggs is currently serving a sentence of twenty-five years to life in prison with the possibility of parole following his 1985 conviction on charges of first-degree murder. The conviction stemmed from Biggs' involvement in the 1981 murder of David Roberts.

Biggs worked for a company that trafficked in stolen computer parts. One of Biggs' employers was arrested and charged with grand theft in connection with approximately $3 million in computer parts. David Roberts was to serve as a witness in that trial. Biggs was asked to kill Roberts; a request he refused, but he agreed to be involved in the ruse to murder him. Biggs was present at the location during the murder, paid money to the co-conspirators, and returned with the killer in an attempt to better conceal the body.

In March 1982, Biggs was convicted for attempting to receive stolen computer parts. He was granted two years' probation and four months in jail.

In July 1984, Biggs was arrested for the murder of David Roberts. On February 2, 1985, he was convicted of violating California Penal Code 187, murder in the first degree, and was subsequently sentenced to twenty-five years to life in prison.

Throughout his period of incarceration, Biggs has been a model inmate. In 1986, he received his sole disciplinary violation for failing to follow instructions. Other than that violation, the record is replete with the gains Biggs has made. His work supervisors have consistently lauded his skills and efforts. Biggs has completed advanced college degrees and vocational training, earning an A.A. degree from Delta College, became certified by the FAA in two aviation programs, earned a Bachelor's degree in business administration, and then his Masters in Business Administration.

On March 23, 1999, Biggs was considered for parole by the Board. Biggs waived his right to an attorney and made an extensive written submission. The

---

* Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation. CA, for the respondents-appellees.

written submission included in detail Biggs' activities while in jail. The Board found him unsuitable for parole and denied him reconsideration for two years.[1] The Board based its denial on the following findings:

1. That extra weight could be assigned to petitioner's commitment offense on the grounds that petitioner took part in murdering a witness.

2. That petitioner was unsuitable for parole because of the manner in which the murder was carried out.

3. That petitioner failed to profit from society's previous attempts to correct his criminal behavior.

4. That petitioner had an escalating pattern of criminal conduct.

5. That petitioner needs therapy to deal with stress in a non-destructive manner.

6. That petitioner's gains in behavior are recent and need to be maintained.

7. That petitioner lacks remorse because he did not turn himself in.

8. That petitioner cannot expect to work his way out of prison.

9. That petitioner should not have included mitigating factors and did not appear sincere.

10. That the last word in petitioner's sentence is "LIFE" and that he shouldn't expect to work his way out of prison.

Biggs appealed the Board's decision to the Board of Prison Terms, and his appeal was denied. He then petitioned the courts for a writ of habeas corpus alleging that he was denied a fair and impartial hearing at the parole consideration hearing. The petition was denied, as were his subsequent petitions to the California Court of Appeal and the California Supreme Court. The petition to the district court followed.

On April 17, 2002, the United States District Court for the Eastern District of California issued an order adopting the findings and recommendations of the magistrate judge, and denying Biggs' habeas petition. The district court found no factual support for seven of the ten findings relied on by the Board. However, the district court found reliable evidence to support the Board findings that (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting callous disregard for the life and suffering of another; and (3) that petitioner could benefit from therapy. *Biggs v. Terhune*, No. Civ. S–00–1686 (E.D.Cal. Apr. 17, 2002) (District Court Order incorporating the Magistrate Judge's March 18, 2002 Findings and Recommendations).

## II.

■ Biggs argues that the Board violated his due process rights by failing to find him suitable for parole, thus depriving him of a liberty interest. The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV. In analyzing the procedural safeguards owed to an inmate under the Due Process Clause, we must look at two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir.2002), *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.1998).

---

1. Biggs' subsequent parole hearings are not at issue in the present case since he has not exhausted his remedies in state court.

Accordingly, this Court must first address whether Biggs has a constitutionally protected liberty interest in parole. The Supreme Court in *Greenholtz v. Inmates of Nebraska Penal,* 442 U.S. 1, 7, 11–12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and *Board. of Pardons v. Allen,* 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), established that:

> while there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence, a state's statutory scheme, if it uses mandatory language, creates a presumption that parole release will be granted when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest.

*McQuillion,* 306 F.3d at 901 (internal quotation marks and citations omitted).

This Court addressed the California parole scheme in *McQuillion,* wherein a California state prisoner had been granted a parole date by the California Board of Prison Terms, only to have it rescinded by a subsequent Board. This Court found that the parole scheme "uses mandatory language and is largely parallel to the schemes found in *Greenholtz* and *Allen* . . ." therefore a liberty interest was created. *Id.*

■ California Penal Code § 3041(b) controls both the present dispute and the dispute in *McQuillion.* In relevant part, Section 3041(b) states:

> The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

This language clearly parallels the language used in the Nebraska and Montana statutes addressed in *Greenholtz* and *Allen,* respectively. Neb.Rev.Stat. §§ 83–1, 114(1) (1976) (whenever a prisoner is considered for parole the Board "*shall* order his release *unless* it is of the opinion that his release should be deferred . . .") (emphasis added); Mont.Code Ann. § 46–23–201 (1985) ("the board *shall* release on parole") (emphasis added). Therefore, it is clear that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion,* 306 F.3d at 902.

The State of California argues that the *Greenholtz* and *Allen* analysis is inapplicable because *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), eliminated the "mandatory language" approach. This argument was, however, made and rejected in *McQuillion.* 306 F.3d at 903. *Sandin* dealt with internal prison disciplinary regulations, and does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen.* See *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293 (citing *Allen* with approval); *McQuillion,* 306 F.3d at 903; *Ellis v. District of Columbia,* 84 F.3d 1413, 1417–18 (D.C.Cir.1996).

The State of California also argues that *McQuillion* is inapplicable to Biggs' situation because Biggs was never granted a parole date and therefore never had a liberty interest. We reject this argument. Both cases are governed by the same parole scheme. Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause. *See Greenholtz,* 442 U.S. at 7, 99 S.Ct. 2100; *Allen,* 482 U.S. at 369, 107 S.Ct. 2415; *McQuillion,* 306 F.3d at 903; *Powell v. Gomez,* 33

F.3d 39, 40 (9th Cir.1994); *In re Rosenkrantz*, 29 Cal.4th 616, 655–58, 128 Cal. Rptr.2d 104, 59 P.3d 174 (Cal.2002) (holding that prisoners have a protected liberty interest in parole under the due process protections of the California Constitution). The liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate.

### III.

■ Because the California parole scheme vests in every inmate, a constitutionally protected liberty interest, we look to the second step in the procedural due process analysis to see if adequate procedural protections were afforded Biggs. *Brewster*, 149 F.3d at 982. In the parole context, the requirements of due process are satisfied if "some evidence" supports the decision. *McQuillion*, 306 F.3d at 904; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389 (9th Cir.1987) (adopting the "some evidence" standard set forth by the Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). "Additionally, the evidence underlying the board's decision must have some indicia of reliability." *Jancsek*, 833 F.2d at 1390.

Biggs does not contend that the procedural safeguards afforded him at the parole hearing violated due process.[2] Under California law, eligible prisoners are considered for parole at a suitability hearing before a panel of state officials. Cal.Penal Code § 3041.5(a). Prisoners are entitled to be present at the hearing, speak and offer evidence on their own behalf, and prisoners serving a life sentence are entitled to be represented by counsel at the hearing. Cal.Penal Code §§ 3041.5(a)(2), 3041.7. Biggs was present at his hearing, waived representation by counsel and submitted a lengthy document with exhibits for consideration.

■ Instead, Biggs challenges that the Board's decision was unsupported by evidence. California law allows the Board to consider a myriad of factors when weighing the decision of granting or denying parole. Parole may be denied if the Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for [the] individual." Cal.Penal Code § 3041(b). Additionally, the Board can consider all relevant information including potential threats to public safety, whether the offense was carried out in a manner which demonstrates exceptionally callous disregard for human life, and whether the prisoner engaged in misconduct while in jail. 15 Cal.Code of Regs. § 2402(c)(6); *See In re Ramirez*, 94 Cal.App.4th 549, 565–67, 114 Cal.Rptr.2d 381 (2001).

■ The record in this case and the transcript of Biggs' hearing before the Board clearly show that many of the conclusions reached and factors relied on by the Board were devoid of evidentiary basis.[3] The district court correctly rejected

---

**2.** Biggs does assert that the Board is systematically biased in their decision-making, denying all life prisoners parole appeals. However, Biggs failed to raise the question in his habeas petition, so we do not address it here. *See Belgarde v. Montana*, 123 F.3d 1210, 1216 (9th Cir.1997) ("Habeas claims that are not raised in the petition before the district court are not cognizable on appeal.") (internal citations omitted).

**3.** Under Federal Rule of Evidence 201, this court grants the Appellant's motion to take judicial notice of the transcript of Biggs' hearing before the Board of Prison Terms. Materials from a proceeding in another tribunal are appropriate for judicial notice. *Papai v.*

the findings that Biggs has an escalating pattern of criminal conduct, is not remorseful for his actions, that he failed to profit from previous attempts to correct his criminality, and that his gains are "recent." No evidence exists to support the Board's reliance on these factors.

■ The finding that Biggs "has" an escalating pattern of criminal conduct has little support in the record. Biggs has been crime and discipline free since 1986, and the record shows that he has been an exemplary inmate throughout that period. Similarly, numerous psychological reports in the record and Biggs' own testimony show that he is remorseful for his actions, and has taken responsibility for the role that he played. The record is devoid of support to show that Biggs failed to profit from his previous attempts at rehabilitation. His arrest in 1982 for attempting to receive stolen property was after the 1981 murder of David Roberts. Nothing about the 1982 sentence could have impacted Biggs' role in the murder, and the record does not show any further criminal conduct after the 1982 arrest. The gains achieved by Biggs are not recent, the record is filled with reports of exemplary conduct as well as vocational and educational achievements for many years.

■ However, the district court was correct in finding that in spite of the fact that several of the Board's findings were unsupported, there was some evidence supporting the Board's decision that Biggs is not entitled to relief at this time. Section 3041(b) allows the gravity of the offense to be considered in requiring a period of longer incarceration. The murder of which Biggs was convicted involved killing a witness in a manner which exhibited a callous disregard for life. Under a ruse, the co-conspirators tricked the witness into believing they were taking him out of state, and then they bludgeoned him to death. While Biggs did not commit the murder himself, he was intertwined with the conspiracy from the very beginning.

■ The requirements of due process vary with the private and governmental interests at stake and the circumstances of the alleged deprivation. *See, e.g. Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). To insure that a state-created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by state statute to be considered, but also the concepts embodied in the Constitution requiring due process of law. *See, e.g. Greenholtz*, 442 U.S. at 7–8, 99 S.Ct. 2100.

The Parole Board's decision is one of "equity" and requires a careful balancing and assessment of the factors considered. *Id.* at 8, 99 S.Ct. 2100. As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

We must be ever cognizant that "[d]ue [p]rocess is not a mechanical instrument.

*Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n. 5 (9th Cir.1995), *rev'd on other grounds*, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800

(1997) (taking judicial notice of a decision and order of an Administrative Law Judge).

It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process." *Lankford v. Idaho,* 500 U.S. 110, 121, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 163, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.

Because the Board's decision was supported by some evidence, we AFFIRM.