Miguel QUINTEROS, aka Miguel
Angel Quinteros, Petitioner,

v.

Robert J. HERNANDEZ, Respondent.

No. CV 04–7954–SJO(RC).

United States District Court,
C.D. California.

March 7, 2006.

Miguel Quinteros, Blythe, CA, Pro se.

Beneth A. Browne, CAAG Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

OTERO, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, which include a traverse petitioner claims was sent to the Clerk of Court, but which the Clerk never received or filed, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On January 27, 1994, in Los Angeles County Superior Court case no. SA010798, a jury convicted petitioner Miguel Quinteros, aka Miguel Angel Quinteros, of one count of second degree murder in violation of California Penal Code ("P.C.") § 187(a) (count 1) and one count of conspiracy to commit assault in violation of P.C. §§ 182(a)(1)/245(a)(1)(count 2). Lodgment, Exh. A. Petitioner was sentenced to the total term of fifteen years to life in state prison. Id. Petitioner appealed his convictions and sentence to the California Court of Appeal, which affirmed the judgment in an unpublished opinion filed June 2, 1995. Lodgment, Exh. C.

On January 23, 2002, petitioner had his initial parole hearing before a panel of the California Board of Prison Terms ("the BPT"),[1] which denied petitioner parole for three years, determining petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Lodgment, Exh. F at 89. In making this determination, the BPT gave several reasons:

[N]umber one was the timing and gravity of the commitment offense itself which was carried out in a very brutal and callous manner. Also the victim probably suffered considerably during the process of this crime.... [Petitioner] and his crime partners, all members of a gang, South Side 13, went out to the beach. [Petitioner] started the whole incident by confronting ... the victim in this case, [then] he got into an altercation with the victim and had attempted to extort money from him. He went and got—enlisted the aid of his fellow gang members. They went back and severely beat the victim. He probably suffered considerably over a period of time as he was being beaten with a metal pipe or bar resulting in the victim's death. Regarding [petitioner's] previous record, he did have [a] significant previous record. He was only 20 years old at the time of the commitment offense, so he didn't have a lot of time to amass a record. As a juvenile, he had one previous sustained petition for [grand theft auto] and as an adult, he had convictions, one misdemeanor conviction for burglary, one felony conviction for burglary, [and a] misdemeanor[ ] conviction for battery. He had also violated his probation, and was on probation at the time of the life offense. He was a self-admitted gang member. He had a problem with alcohol. He was diagnosed with alcohol abuse in institutional remission, and had difficulty maintaining em-

1. The BPT was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. California Penal Code ("P.C.") § 5075(a). Nevertheless, since petitioner's parole hearing occurred in 2002, the Court will refer to the BPT.

ployment in the time preceding his life offense. Regarding his institutional behavior on the other hand, it's been good. He has upgraded himself vocationally, got a vocation as an optician. He has upgraded himself educationally. He's participated in a number of self-help programs including Conflict Resolution, Hands of Peace, Parenting program, [and] Anger Management among others. He also had some time in AA, but then he has failed to continue with that. That does cause the Board some concern in view of his history, the factors involving alcohol in the life offense and also his diagnosis consistently has been of alcohol abuse in institutional remission, or remitting. He's been disciplinary free essentially throughout his incarceration, no 115s. He's had a couple of counseling chronos, one for refusing to stand for count, and one for failure to respond to a PA announcement. The most recent of those was in '98, so his behavior has been good. The latest psychological evaluation by Dr. Pesapento, 8–22 of 2001, is fairly positive. He finds that his violence potential is greatly decreased. He is diagnosed with alcohol abuse remitting. The CCI report, CCI Kealy ... does find his violence potential of release to the community to be unpredictable at this point. His parole plans appear to be pretty much in order. He does have a vocation, he has a job interest letter in his area of expertise as an optician. He also has a job offer in an auto shop from a relative, and he appears to have considerable family support including his wife and children and other family and friends in the Los Angeles area.

\* \* \* \* \* \*

[Petitioner] hasn't completed necessary programming which is essential to his adjustment and needs additional time to gain such programming, specifically in the area of alcohol abuse. And also in any self-help or therapy programs that will assist him in dealing with the causative factors of the commitment offense in coming to terms with his responsibility and involvement [in] the crime. The Panel is not convinced that he fully appreciates his level of responsibility for this incident.

Lodgment, Exh. F at 89–93. On March 28, 2002, petitioner filed an administrative appeal, which the BPT denied on June 11, 2002. Lodgment, Exhs. G–H.

On August 6, 2002, petitioner filed a habeas corpus petition challenging the BPT's decision in the Los Angeles County Superior Court, and that petition was denied on August 13, 2002. Lodgment, Exh. L at 283–84. On September 17 and December 10, 2002, petitioner sought reconsideration from the Los Angeles County Superior Court, which denied both requests. *Id.* at 285–87. On July 7, 2003, petitioner filed a habeas corpus petition in the California Court of Appeal, which denied the petition on July 23, 2003. Lodgment, Exhs. J–K. Finally, on August 14, 2003, petitioner filed a habeas corpus petition in the California Supreme Court, which denied the petition on May 19, 2004. Lodgment, Exhs. L–M.

## II

On September 24, 2004, petitioner, proceeding pro se, filed the pending petition for writ of habeas corpus. On December 28, 2004, respondent filed a motion to dismiss the petition claiming it is unexhausted, procedurally defaulted, and raises claims not cognizable on federal habeas corpus review. On January 24, 2005, petitioner filed an opposition to the motion to dismiss, and on May 19, 2005, the Court denied the motion to dismiss. On July 18, 2005, respondent answered the habeas corpus petition. Petitioner did not file a reply or traverse.

The pending petition raises the following grounds for habeas corpus relief:

Ground One—Petitioner was denied due process and equal protection of the law because the BPT and California courts have not properly construed P.C. §§ 1168(b), 3041(a) and 3041(b)(Petition at 5);

Ground Two—Petitioner was denied due process and equal protection of the law because the BPT refused to set a parole date at petitioner's initial parole hearing (*id.*);

Ground Three—Petitioner was denied due process and equal protection of the law because 15 C.C.R. §§ 2281(c) and 2402(c) are inconsistent with P.C. §§ 1168(b) and 3041(a-b)(Petition at 6); and

Ground Four—In increasing petitioner's incarceration past his initial parole hearing, the BPT changed the meaning of "gravity" in P.C. § 3041(b), in violation of petitioner's due process and equal protection rights and the prohibition against ex post facto laws. (*Id.*).

## DISCUSSION

### III

The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by the AEDPA, 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, a federal court shall presume that a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The California Supreme Court reached the merits of petitioner's claims when it denied his habeas corpus petition without comment or citation to authority. *Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir.2002), *as amended*, 311 F.3d 928 (9th Cir.2002); *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "[w]here there has been one reasoned judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Thus, in addressing petitioner's claims, this Court will consider the reasoning of the Los Angeles County Superior Court, which issued a written decision addressing at least some of petitioner's claims.[2] *Bonner v. Carey*, 425 F.3d 1145, 1148 n. 13 (9th Cir.2005); *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1038 (9th Cir.2005).

2. *See* Lodgment, Exh. L at 283–84.

However, to the extent petitioner's claims have not been addressed by any reasoned state court decision, this Court must conduct "an independent review of the record ... to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *Pham v. Terhune,* 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

## IV

■ In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *see also Dugger v. Adams,* 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Moreover, the petitioner "may not transform a state-law issue into a federal one merely by asserting a violation of [a constitutional right]." *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.), *cert. denied,* 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997).

■ Here, to the extent petitioner claims the BPT has improperly interpreted and applied California law to deny him a parole date, or that certain California regulations or statutes conflict with other California law, petitioner's claims are not cognizable in this proceeding. *See Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."); *Rivera v. Pugh,* 194 F.3d 1064, 1067 (9th Cir.1999) (" 'A state prisoner may not argue for habeas relief in a federal court based on a state court's erroneous interpretation of state law.' " (citation omitted)).

However, the Court will address petitioner's constitutional claims of due process, equal protection and ex post facto violations.

## V

The Fourteenth Amendment's due process clause provides that a person may not be deprived of life, liberty, or property without due process of law. The Supreme Court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted). "Accordingly, this Court must first address whether [petitioner] has a constitutionally protected liberty interest in parole." *Biggs v. Terhune,* 334 F.3d 910, 914 (9th Cir.2003).

■ A prisoner has "no constitutional or inherent right ... to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979); *Bergen v. Spaulding,* 881 F.2d 719, 721 (9th Cir.1989). However, a state's parole scheme that uses mandatory language to "create[ ] a presumption that parole release will be granted" when or unless certain designated findings are made, can give rise to a liberty interest protected by the due process clause. *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106; *Board of Pardons v. Allen,* 482 U.S. 369, 377–78, 107 S.Ct. 2415, 2420–21, 96 L.Ed.2d 303 (1987); *McQuillion v. Duncan,* 306 F.3d 895, 901 (9th Cir.2002).

At the time of petitioner's 2002 parole hearing, California's parole scheme provided that the BPT:

shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

P.C. § 3041(b) (2002). The BPT by law considers numerous factors in making this determination, including:

[petitioner's] social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the [petitioner] may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 C.C.R. § 2402(b-d) (2002). The Ninth Circuit has found that "[u]nder the 'clearly established' framework of *Greenholtz* and *Allen*, . . . California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902; *Biggs*, 334 F.3d at 914–15.

"Because the California parole scheme vests in every inmate a constitutionally protected liberty interest, [the Court] look[s] to the second step in the procedural due process analysis to see if adequate procedural protections were afforded [petitioner]." *Biggs*, 334 F.3d at 915. "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz*, 442 U.S. at 12, 99 S.Ct. at 2106, 99 S.Ct. 2100 (citations omitted); *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir.1987), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988). In parole suitability hearings, the state procedure must "afford[ ] an opportunity to be heard, and when parole is denied [the BPT must] inform[ ] the inmate in what respects he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16, 99 S.Ct. at 2108, 99 S.Ct. 2100; *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir.1991). Under California law, inmates eligible for parole are afforded a suitability hearing before a panel of state officials. *Biggs*, 334 F.3d at 915 (citations omitted). Further, "[p]risoners are entitled to be present at the hearing, speak and offer evidence on their own behalf, and prisoners serving a life sentence are entitled to be represented by counsel at the hearing." *Id.*; P.C. §§ 3041.5(a), 3041.7. Additionally, if a parole date is not set, an inmate is entitled to "a written statement setting forth the reason or reasons for refusal to set a parole date, [including] suggest[ed] activities in which he or she might participate that will benefit him or her while he or she is incarcerated." P.C. § 3041.5(b)(2) (2002). Here, petitioner was present at a suitability hearing and represented by counsel, he spoke on his own behalf, was allowed to present evidence, and subsequently received a written decision setting forth the BPT's reasons for finding him unsuitable for parole and suggesting further actions he might take to enhance his suitability. Lodgment, Exh. F. Thus, petitioner received all the procedural safeguards he was entitled to, and petitioner does not contend otherwise.

Rather, the crux of petitioner's claims in Grounds One through Three is that petitioner was denied due process of

law because he was not provided a parole date at his initial parole hearing, and the decision to deny him parole is not supported by any evidence. The Los Angeles County Superior Court denied this claim, finding:

> The [BPT] reviewed the [petitioner's] prison file including medical-psychological reports and any other relevent [sic] information concerning parole issues. A complete review of the parole hearing transcript and all exhibits attached to [petitioner's] petition indicate no evidence to suggest that the Parole Board's decision was based on anything but relevant issues during the hearing. The Parole Board's decision and findings were proper.

Lodgment, Exh. L at 283–84.

 "The Board of Prison Terms enjoys broad discretion in parole-related decisions. In exercise of this broad discretion [the BPT] may deny parole for up to five years for an inmate convicted of murder if the [BPT] finds 'that it is not reasonable to expect that parole would be granted at a hearing during the [next five] years.' " *Rosas v. Nielsen,* 428 F.3d 1229, 1232 (9th Cir.2005) (per curiam) (citations omitted); P.C. § 3041.5(b)(2)(B). The BPT's decision to deny an inmate parole satisfies due process "if the determination has been supported by 'some evidence' having 'some indicia of reliability.' " *McQuillion,* 306 F.3d at 904; *Rosas,* 428 F.3d at 1232; *see also Jancsek v. Oregon Bd. of Parole,* 833

F.2d 1389, 1390 (9th Cir.1987) (adopting for parole determinations the "some evidence" standard set forth in *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). "The 'some evidence' standard is minimally stringent, such that a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the ... board." *Powell v. Gomez,* 33 F.3d 39, 40 (9th Cir.1994) (citations and internal quotation marks omitted); *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774.

Here, as set forth above, the BPT weighed the circumstances for and against granting petitioner parole and found petitioner unsuitable for parole based on a number of factors, including: (1) the nature of his commitment offense, which involved petitioner, a gang member, demanding money from the victim and his friends, "who by all accounts were just minding their own business attempting to enjoy an evening at the beach[,]" initiating a physical altercation when the victim refused, and then enlisting the aid of his fellow gang members to attack the victim, who was brutally beaten to death with a metal pipe or bar and "probably suffered considerable pain prior to his death";[3] (2) petitioner's prior criminal record and activities, which include two prior burglary convictions, a battery conviction and a sustained juvenile petition for grand theft auto; (3) petitioner's previous lack of success while on probation; (4) petitioner's history of gang membership; and (5) peti-

---

3. Petitioner argues he "does not have a particularly egregious 2nd degree murder conviction[.]" Petition at 5. However, as the California Supreme Court recently clarified, the BPT is "not require[d] ... to schedule an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes." *In re Dannenberg,* 34 Cal.4th 1061, 1084, 23 Cal.

Rptr.3d 417, 431, 104 P.3d 783 (2005), *cert. denied,* — U.S. —, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005). Here, the BPT, as set forth above, identified circumstances of the offense more aggravated than those necessary to sustain a second degree murder conviction. *Id.* at 1095, 104 P.3d 783, 23 Cal.Rptr.3d at 440–41, 104 P.3d 783; *In re Rosenkrantz,* 29 Cal.4th 616, 683, 128 Cal.Rptr.2d 104, 161, 59 P.3d 174 (2002), *cert. denied,* 538 U.S. 980, 123 S.Ct. 1808, 155 L.Ed.2d 669 (2003).

tioner's failure to complete necessary programming, particularly regarding his alcohol abuse. Lodgment, Exh. F at 89–93. These factors certainly constitute "some evidence" bearing "some indicia of reliability" to support the BPT's decision to deny petitioner parole at petitioner's initial parole hearing and, therefore, petitioner was not deprived of due process of law. *Rosas*, 428 F.3d at 1232; *Biggs*, 334 F.3d at 916.

 Petitioner also claims he has been denied due process of law because the BPT did not set a parole date for him at his initial parole consideration hearing. As set forth above, P.C. § 3041 provides that an inmate is not entitled to be paroled or to have a parole date set until **after** he has been found suitable for parole. P.C. § 3041(b); *see also* 15 C.C.R. § 2402(a)(2002) ("The [BPT] shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the [BPT] the prisoner will pose an unreasonable risk of danger to society if released from prison."). Here, the BPT found petitioner unsuitable for parole; thus, petitioner has no due process right to parole or a parole date. *Bergen*, 881 F.2d at 721; *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1055 (C.D.Cal.2005).

Therefore, the California Supreme Court's denial of petitioner's due process claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI

 The Fourteenth Amendment's equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439,

105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir.2004). Thus, equal protection does not require that things that are different in fact be treated the same in law. *Rostker v. Goldberg*, 453 U.S. 57, 79, 101 S.Ct. 2646, 2659, 69 L.Ed.2d 478 (1981); *Michael M. v. Superior Court*, 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981). Moreover, to allege an equal protection violation, petitioner must allege he was similarly situated to others who received preferential treatment, *Cleburne*, 473 U.S. at 439, 105 S.Ct. at 3254; *Fraley v. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir.1993), and petitioner must also allege discriminatory motive or intent for that different treatment. *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir.1999), *cert. denied*, 528 U.S. 1086, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000); *Thomas v. Borg*, 159 F.3d 1147, 1150 (9th Cir.1998), *cert. denied*, 526 U.S. 1055, 119 S.Ct. 1365, 143 L.Ed.2d 526 (1999).

 Here, petitioner merely broadly alleges the BPT denied him equal protection of the law when it denied him parole, and petitioner fails to allege either discriminatory intent or to set forth any facts supporting his conclusory claim. In federal habeas review, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir.), *cert. denied*, 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994); *Jones v. Gomez*, 66 F.3d 199, 204–05 & n. 1 (9th Cir.1995), *cert. denied*, 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *see also McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (in order to prevail on equal protection claim, petitioner must show similarly-situated individuals have systematically received more favorable treatment).[4] Therefore, the California Su-

---

4. Indeed, all inmates applying for parole are not similarly situated. *See,* e.g., *Bennett v.*

*People of the State of Cal.,* 406 F.2d 36, 38–39

preme Court's denial of petitioner's equal protection claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VII

■■■ Article I of the United States Constitution provides that neither Congress nor any state shall pass an ex post facto law. U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. "Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized ... that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). The ex post facto clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Corr. v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (citations omitted). Thus, an ex post facto law "punishes as a crime an act previously committed, which was innocent when done[,] which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed...." *Collins,* 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)); *Stogner v. California,* 539 U.S. 607, 612, 123 S.Ct. 2446, 2450, 156 L.Ed.2d 544 (2003).

In Ground Four, petitioner claims the BPT has violated the ex post facto clause by misconstruing the term "gravity" in P.C. § 3041(b). Petition at 6. However, petitioner has not explained how this is so. On October 18, 1991, the date petitioner committed murder, Lodgment, Exh. C at 18, P.C. § 3041(b) required the BPT to consider the "gravity" of the offense in determining whether to set a release date for a prospective parolee, and the BPT is still required to do so. *Compare* P.C. § 3041(b) (1991) ("The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."); P.C. § 3041(b) (2006) ("The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."). Simply put, petitioner has pointed to no change in the law following the commission of his crime implicating the ex post facto clause. *Walters v. Maass,* 45 F.3d 1355, 1360–61 (9th Cir.1995). As such, the California Supreme Court's denial of Ground Four was neither contrary to, nor an un-

(9th Cir.) (denying inmate's equal protection claim based on allegation other inmates were released from prison before him, and noting "[t]he Constitution does not make it legally impossible for a state, in granting or refusing parole, to make an individualized judgment in each case"), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969); *Sweazea v. Missouri Bd. of Probation & Parole,* 742 F.2d

482, 483 (8th Cir.1984) (per curiam) (denying inmate's equal protection claim based on allegation that "other inmates who had committed crimes arguably worse than his ... were assigned parole dates earlier than his" because inmate "was not similarly situated with those against whom he was comparing himself").

reasonable application of, clearly established federal law.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

January 19, 2006.